UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Erin M. Murphy

    v.                                    Case No. 23-cv-281-PB-AJ

Acting Commissioner, Social
Security Administration

**Report and Recommendation**

Erin M. Murphy seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Acting Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act. She argues that the Administrative Law Judge ("ALJ") improperly relied on his own medical opinion in assessing her residual functional capacity and improperly evaluated medical opinions provided by state agency reviewing consultants. Because of those errors, Murphy contends, the ALJ's finding that she was not disabled is not supported by substantial evidence. The Acting Commissioner moves to affirm the ALJ's decision.

The motions were referred to the undersigned magistrate judge for a report and recommendation. For the following reasons, the court recommends that the district judge grant the Acting Commissioner's motion to affirm and deny Murphy's motion to reverse and remand.

## Standard of Review

In a review under § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154. The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In making a disability determination, an ALJ follows a five-step process, asking "questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433. The steps are as follows: (Step 1) whether the claimant is currently engaging in substantial gainful activity; if not, (Step 2) whether the claimant has a severe impairment; if so,

2

(Step 3) whether the impairment meets or medically equals an entry in the Listing of Impairments; if not, (Step 4) whether the claimant's residual functional capacity is sufficient to allow her to perform any of her past relevant work; and if not, (Step 5) whether, in light of the claimant's residual functional capacity, age, education, and work experience, she can make an adjustment to other work available in the national economy.[2] Id. (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). The claimant bears the burden of showing she is disabled through the first four steps, but at Step 5 the Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do. Id. at 434.

## Background

A. Medical Background

Claimant Erin Murphy injured her cervical spine in a diving accident in July 2020. She had surgery to repair the spinal injury in September 2020 through anterior cervical discectomy and fusion. Following surgery, Murphy continued to have pain and other symptoms, including neck pain, limited neck motion, and weakness in her arms.

On February 1, 2021, Murphy fell on ice and went to a hospital emergency room for treatment.[1] The fall exacerbated her symptoms from the neck injury and caused numbness in her left arm. She was seen on February 2, by DNP Aaron Kahn who found cervical muscle tenderness, cervical pain with motion and decreased range of motion, thoracic and lumbar spinal tenderness, but full or nearly full strength in both arms. NHP Kahn noted that Murphy had an antalgic gait.

On March 2, 2021, Murphy saw Jason Doran, PA-C, at Seacoast Orthopedic and Sports Medicine. Based on his review of x-rays, PA-C Doran stated that Murphy's spinal fracture had not solidly fused. He prescribed pain medication and referred Murphy to pain management.

Murphy accidentally hit herself in the face with a hammer in August 2021 and was treated in a hospital emergency department and in follow up with DNP Kahn. In January 2022, she had a follow-up appointment with PA-C Doran for neck pain. He found that Murphy's range of motion in the cervical spine was limited due to pain and that rotation of her neck to the right caused crunching and grinding. PAC Doran questioned whether Murphy had a solid spinal fusion.

---

[1] Some medical records show that the fall happened during the last week in January 2021. The exact date of the fall is not material to the issues raised for review.

On April 7, 2022, PA-C Doran reviewed the imaging of Murphy's spine since July 2020. In the CT scan done on January 29, 2021, PA-C Doran noted "no acute bony abnormalities" but evidence of the surgical procedure at C5-6, with a question about whether the bones were fully fused. He also reviewed with Murphy the MRI done on March 17, 2022, with the radiologist's interpretation that showed "a C5-6 anterior cervical discectomy and fusion" and "a right-sided C4-5 disc herniation with impingement on the C5 nerve root."[2] Doc. no. 4-9 at 521. An x-ray taken in PA-C Doran's office on the same day, April 7, showed no degenerative changes but still showed a lack of full fusion. PA-C Doran prescribed medication for pain.

B.  Procedural Background

Murphy applied for social security disability benefits in August 2020, alleging a disability beginning when she was injured in the accident in July 2020. The application was denied initially on June 1, 2021. As part of that determination, Dr. William Kirmes, a state agency consultant with a specialty in internal medicine, reviewed Murphy's medical records and provided a residual functional capacity assessment dated May 6, 2021.

---

[2] The record does not appear to include the actual MRI test result with the radiologist's notes and interpretation.

5

Dr. Kirmes found that Murphy could do work at the light exertional level with some activities limited to occasionally and walking and standing limited to four hours and sitting to six hours in an eight-hour workday. On reconsideration, Dr. Meghana Karande, another state agency consultant with a specialty in internal medicine, reviewed Murphy's records and concurred with Dr. Kirmes's findings in a determination dated January 18, 2022.

After her application for benefits was denied, Murphy requested a hearing. An ALJ held a telephonic hearing on June 14, 2022. Murphy was represented during the hearing and testified. A vocational expert also testified.

The ALJ issued a decision on July 28, 2022. At Step Two, the ALJ found that Murphy had severe impairments due to degenerative disc disease and cervical fracture status post spinal fusion with peripheral neuropathy. Despite those severe impairments, the ALJ found that Murphy had the residual functional capacity to do light work except that she was limited to only occasionally climbing, such as climbing stairs, and occasionally doing postural activities, such as stooping. Based on that residual functional capacity assessment, the ALJ found that Murphy would be able to return to her former work as a flagger and could also be a fast-food worker, a cashier, or a

cleaner. For that reason, the ALJ found that Murphy was not disabled.

Murphy sought review by the Appeals Council, which was denied on March 29, 2023, making the ALJ's decision the final decision of the Acting Commissioner.

## Discussion

Murphy challenges the ALJ's decision on two grounds. She contends that the ALJ's residual functional capacity assessment is unsupported because he relied on his own opinion about her functional limitations related to the MRI done on March 17, 2022. Alternatively, Murphy contends that the ALJ improperly relied on the opinions provided by the state agency consultants without the limitations they found related to standing and walking. The Acting Commissioner argues that the ALJ properly assessed Murphy's residual functional capacity and properly evaluated the consultants' opinions.

I.  Whether the ALJ Improperly Relied on his Own Interpretation of Raw Medical Data

Dr. Kirmes and Dr. Karande provided the only medical opinion evidence that assessed Murphy's residual functional capacity. Medical evidence was submitted to Murphy's record after Drs. Kirmes and Karande provided their opinions, including

7

PA-C Doran's treatment notes from January and April 2022 and an MRI done on March 17, 2022. The ALJ found that the later and unreviewed medical evidence "does not show a significant change in objective findings" and relied on the consultants' opinions.

"An opinion provided by a state agency reviewing consultant cannot provide substantial evidence to support an ALJ's residual functional capacity assessment if the opinion was based on a significantly incomplete record." Clark v. Kijakazi, 2023 WL 3336404, at *6 (D.N.H. May 10, 2023). A claimant's medical record, which has been reviewed by a state agency consultant, is significantly incomplete if there are medical records "added or generated after the review [that] 'would materially change the basis for assessing the claimant's limitations.'" Id. (quoting Provencal v. Kijakazi, 2022 DNH 14, 2022 WL 17324286, at *3 (D.N.H. Nov. 29, 2022)). The ALJ bears the burden to both determine and explain whether the later medical evidence is material, and a conclusory statement without explanation is insufficient to carry that burden. Id.

Taken in isolation, the ALJ's conclusory statement that the later medical evidence did not show "a significant change in objective findings" is insufficient to carry that burden. Taken in context, however, the ALJ reviewed medical treatment notes and evaluations from the time of the diving accident through April 2022 and discussed the evidence to explain his functional

8

capacity assessment. The ALJ noted the providers' findings that Murphy at times had neck pain and limited neck movement but also that she had full strength in her arms and legs and normal sensation and reflexes.

PA-C Doran's description of the March 17, 2022, MRI, based on the radiologist's interpretation, was that it showed "a right-sided C4-5 disc herniation with impingement on the C5 nerve root." As reported by PA-C Doran, the March 17 MRI included different findings than prior imaging. Doc. no. 4-9 at 66. Nevertheless, despite disc herniation with impingement, the contemporaneous objective findings from Murphy's treatment records with PA-C Doran show normal results, before and after the March 17 MRI. The ALJ correctly stated that the medical evidence did not show a significant change in the objective findings about Murphy's impairments.

Murphy argues, however, that the ALJ improperly relied on his own lay interpretation of the functional effects of the March 17 MRI to conclude that the later medical evidence did not show a significant change. Because an ALJ is a lay person and not a physician, an ALJ is not qualified to interpret raw medical data in functional terms for purposes of assessing residual functional capacity and, instead, must have a medical opinion that assesses functional capacity. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Curtis v. Kijakazi, 2022 WL 994500,

9

at *5 (D.N.H. Mar. 29, 2022). An ALJ's inability to interpret raw medical data in functional terms precludes an ALJ from interpreting test results, such as an MRI, for purposes of assessing a residual functional capacity. See Ouellette v. Berryhill, 2018 WL 3031855, at *5 (D.N.H. June 19, 2018); Giandomenico v. Acting Commissioner, SSA, 2017 WL 5484657, at *5 (D.N.H. Nov. 15, 2017). On the other hand, however, an ALJ can rely on a medical professional's interpretation of test results, even when that information is not part of a formal functional assessment. See, e.g., Fitts v. Kijakazi, --- F. Supp. 3d ---, 2023 DNH 114, 2023 WL 5928316, at *9, n.10 (D.N.H. Sept. 12, 2023); Martin v. Berryhill, 2018 WL 799159, at *6 (D.N.H. Feb. 9, 2018).

In this case, PA-C Doran repeated the radiologist's interpretation of the March 17 MRI, stating that it showed "a right-sided C4-5 disc herniation with impingement on the C5 nerve root." Neither the radiologist nor PA-C Doran provided a functional assessment of the March 17 MRI. The ALJ relied on the objective examination findings by PA-C Doran before and after the March 17 MRI that that showed no significant change in the objective findings as to Murphy's impairments.[3] In other words,

---

[3] The ALJ acknowledged that Murphy experienced some exacerbation of her symptoms immediately after she fell in February of 2021, including mild left arm weakness, but that those symptoms had resolved in later orthopedic evaluations.

10

on examination, Murphy's arm and leg strength and gait were normal before the March 17 MRI, except for a brief period after Murphy fell on the ice in February 2021, and remained normal after the MRI. Therefore, substantial evidence in the record supports the ALJ's reliance on the opinions provided by the state agency consultants despite the later-added medical evidence.

II. <u>Whether ALJ Property Evaluated State Agency Consultants' Opinions</u>

Alternatively, Murphy argues that the ALJ improperly evaluated the opinions provided by the state agency consultants when he did not accept their opinions as to the limitations on Murphy's ability to walk and stand. The ALJ considers the medical opinions and prior administrative medical findings in the administrative record as part of the process of assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1520c(a). The ALJ determines the persuasiveness of medical opinions and findings based on the following factors: (1) the supportability of a medical opinion; (2) the extent to which the opinion is consistent with evidence from other sources; (3) the medical source's relationship with the claimant,(4) the specialization of the medical source, and (5) certain other

factors such as the familiarity of the medical source with the disability program. 20 C.F.R. § 404.1520c(c).

The most important factors are the supportability and consistency of the opinion. § 404.1520c(a); § 404.1520c(b)(2); Purdy v. Berryhill, 887 F.3d 7, 13, n.8 (1st Cir. 2018). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 404.1520a(c)(1). Consistency means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520a(c)(2).

The consultants found that Murphy could do work at the light exertional level with a notable exception that she was limited to walking and standing for only four hours in an eight-hour day. The ALJ found that the consultants' opinions were partially persuasive, as to the light exertional level with certain climbing and postural limitations, but he found that the limitation on walking and standing was not persuasive because it was not supported by objective findings in the record. The ALJ

explained: "No providers observed any difficulties with gait leg motion, or leg strength and no providers recommended any standing or walking restrictions." Doc. no. 4-2 at 22.

Murphy challenges the ALJ's characterization of the record, noting that DNP Kahn found that she had an antalgic gait immediately after she fell on the ice in February 2021. At Murphy's appointment two weeks after the fall, however, DNP Kahn found on examination that Murphy had normal strength in her arms and legs (except a slight strength deficit in her left arm) and a normal gait. In March 2021, PA-C Doran found that Murphy had "normal gait, no limp, and ambulating with no assistive devices. Tandem walking not off balance." Doc. no. 4-9, at 50. During a pain management appointment in May 2021, Dr. Thomas Zouki found that Murphy's gait was "intact" and that she could heel-toe walk. On January 6, 2022, PA-C Doran found that Murphy had a normal gait with no limp and had normal strength, reflexes, and sensation in her arms and legs. And, again on April 7, 2022, PA-C Doran found that Murphy had a normal gait. Therefore, the record evidence overwhelmingly supports the ALJ's explanation for discounting the consultants' opinions about Murphy's limitations as to walking and standing.

Nevertheless, Murphy argues that the consultants supported their opinions by citing an x-ray done on March 2, 2021, that showed "'lucency of the host bone and inferior endplate of C5

13

and the superior endplate of C6.'" Doc no. 8-1, at 9 (quoting doc. 4-3, at 65 & 73). Murphy contends that it would be "reasonable" that she could not walk more than the consultants found because she did not have a solid fusion at C5-6. Id. Murphy also argues that the March 2, 2021, examination report supports the consultant's findings because she reported debilitating pain.

Contrary to Murphy's explanation, the consultants reviewed the x-ray done on March 2, 2021, but did not cite the x-ray or the lack of a solid fusion as the reason they limited the time she could walk and stand. In the absence of a medical opinion linking the lack of a solid fusion to limitations on the ability to walk and stand, the x-ray does not provide evidence to support that opinion.

The consultants cited the examination done at Seacoast Orthopedics on March 2, 2021, as part of the support for their exertional limitations. In his notes from the March 2 appointment with Murphy, PA-C Doran wrote that Murphy was there for an evaluation of her neck injury and because she was having difficulty with gripping and strength in her hands and with dizziness when bending down. Murphy reported that she had sharp pain when bending down and when turning her head from side to side and that the pain was worse on the left side.

14

On examination, PA-C Doran found that Murphy had a normal gait, no limp, and tandem walking was not off balance. The test results for her legs were normal. He also found that flexion and range of motion in Murphy's neck was limited by pain. Because Murphy reported that she had debilitating pain when bending or turning her head, PA-C Doran referred her to pain management. PA-C Doran did not find that Murphy was limited in her ability to walk or stand, and nothing in the treatment notes expressly supports the consultants' limitations on her ability to walk or stand.

The ALJ properly evaluated the state agency consultants' residual functional capacity opinions.

## Conclusion

For the foregoing reasons, the district judge should deny Erin Murphy's motion to reverse and remand (doc. no. 8) and grant the Acting Commissioner's motion to affirm (doc. no. 11).

Any objections to this Report and Recommendation must be filed within **fourteen days** of receipt of this notice. See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such

objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 26, 2023

cc: Counsel of record